A. ALVAREZ & BROTHERS, Plaintiffs and Appellants, *v.* VICTORIA R. DE ALAMO ET AL., Defendants and Appellees.

No. 3974. Argued March 29, 1927.—Decided March 13, 1928.

*F. Soto Gras* for the appellants. *M. Benítez Flores* for the defendants.

MR. JUSTICE WOLF delivered the opinion of the court.

A. Alvarez & Bros. is a mercantile firm that sells jitneys and its managing partner at the time of the events in this case was Alfonso Alvarez. The said firm made a conditional sale to Victoria R. de Alamo of a jitney and Agustín Alamo, her husband, was security for the fulfilment of the contract. The purchase price was to be paid in instalments. By the terms of the contract the title to the jitney remained in the vendor who had various rights under the said contract. Among them, at its election, in case of default in the payments, the vendor might sue for the price outright or it might take the jitney, sell it and apply the proceeds to the debt, paying the balance, if any, to the purchaser. The purchaser made various payments on account of the sale. The parties then had several interviews and did several acts looking to a rescission of the contract, but whether the contract was or was not actually rescinded is one of the controversies in this

case, if not the principal one. It is an undisputed fact that after the said interviews and acts the defendant Agustín Alamo placed or attempted to place the jitney into the hands of the plaintiff in the following manner. He sent an agent to the establishment of the plaintiff with the jitney and when the plaintiff refused to accept the same the agent left the vehicle in front of the establishment. The plaintiff, to prevent deterioration, took the jitney into the garage, painted it, and perhaps took other steps to preserve it. Then shortly thereafter the plaintiff began a suit against the present defendants to recover the sum of $1,115.21, balance of the purchase money, the original price being $1,813.83.

The complaint, we may say, shows that the plaintiff was electing to sell the jitney and apply the proceeds. At first blush it would seem curious that the prayer of the complaint should ask that the plaintiff be given the possession of the jitney when the plaintiff, in point of fact, had the physical control of it, but we shall discuss a little further on this apparently metaphysical position of the plaintiff.

The answer of the defendants, besides a general denial, set up that the defendants did not owe the plaintiff any sum of money, inasmuch as the same had been paid (*saldado*) and the contract rescinded.

The court below decided in favor of the defendants. The opinion of the court has a twofold aspect. The judge apparently was disposed to hold that the plaintiff by taking charge of the jitney and resorting to measures to preserve it had accepted the acts of the defendants. More particularly the court held, we take it, that before the plaintiff would have any right to sue for a sum of money or balance of money the indispensable prerequisite to a suit was the sale by the plaintiff itself of the jitney already in its physical possession. Neither of these *rationes decidendi* was really the position of either party in this suit.

The plaintiff maintained that the contract was in full

force. The defendants maintained that the contract had been rescinded or perhaps a *dation en paiement* had arisen. The defendants now contend that they relied on a rescission. In this regard the court made no finding in favor of the defendants; on the contrary the court found that the proof in this regard was not at all clear.

Without any special inquiry into the authorities we are satisfied that when a physical object, in which a party has an interest, is returned or attempted to be returned by another person, perhaps under a duty to return it, or at least to do with it what the contract between them requires, the person to whom the object is returned, like a good father of a family, has a right to take the object to prevent further deterioration, and in the interest of all the parties to preserve it. We think a stranger might do similar acts of preservation without involving himself in litigation. By taking charge of the jitney and preserving it no existing judicial relation between the original parties to this suit was changed or affected.

Counsel for the appellees has said that the principal question in this case is one of fact and to a large extent we agree with him. The following, however, are some of our conclusions from the evidence. The jitney business of the defendants was not prospering. According to Alamo's own testimony he went to see Alvarez and told the latter of his difficulties and asked the said Alvarez to buy the bus line. According to the said witness, Alvarez said that he was only disposed to accept the jitney in payment. Although Alvarez tells the story rather differently, nevertheless by the statement of the defendant himself the latter did not accept the proposition so made to him by Alvarez. Alamo proposed a sale to a third person, his brother-in-law Robles. Still following the story of the said defendant as witness, Alvarez said that the contract would first have to be rescinded, but otherwise he was agreed. It was evident from the conversation that

Alamo at that time did not think that it was advantageous to him to turn over the jitney. Negotiations were entered into, a paper writing was drawn up, signed by both the spouses Alamo and evidently returned to Alvarez. This paper was not produced at the trial and its production might have been useful.

Parenthetically we may say that at no time during the pendency of this action was there any evidence of the present value of the jitney or of its value at the various stages of the controversy, unless it be in the various supposed offers to buy it. We know nothing from the evidence of the value of the jitney on the date when it was actually returned or at the time of the trial.

From the whole evidence it is unquestioned that Robles did not buy or finally offer to buy the jitney. He objected to the original terms of payment which Alvarez, we think the evidence shows, was disposed to modify. As we read the evidence, the proposed transaction simply fell down because Robles, for some reason not disclosed therein, did not care to go on with the transaction.

Robles took the stand. He was a reluctant witness and he was disposed to deny that the purchase from his brother-in-law of the line was to include the jitney, but that he only agreed to buy the "line." Eventually, we think, he made the admission. The record leaves us in no doubt that Robles was in negotiations to buy the jitney. The evidence tends to show, and we believe from it, that the license to run this particular jitney was put in Robles' name before it was turned over to Alvarez. The latter testified, confirmed by Alamo, that the thing proposed was a sale to Robles.

Therefore, we conclude as a matter of law or of fact, as the case may be, that a direct or implied condition of any change in the original contract was a purchase by Robles. The signing of the paper by the spouses did not release them from their original obligation unless the sale to Robles was

made. Nor does it affect the issues in this case that the plaintiff, after advising the defendants, was willing to sell to another person or that he opened negotiations with still another one. He was always dependent on the consent of the defendant.

Returning to a consideration of the evidence, we hold that, as in cases of performance, payment and the like, the burden of proof was on the defendants to show a rescission. This they failed to do. The paper which the defendants signed tentatively looking to a rescission of the contract could not help their case. Again we wonder why the defendants did not attempt to produce it or have it produced in court.

The inevitable deduction, then, from the whole evidence is that the jitney was returned to Alvarez, not in performance of the contract but in opposition to its continued existence. The jitney was returned on the theory of a rescission of the contract. This all the parties knew, as the evidence disclosed.

Alamo had reason to know, we think, that Alvarez would not agree that the contract had been rescinded, and for that reason he made the return by an agent in the manner recited. However, the validity and fulfilment of a contract can not be left to the will of one of the contracting parties. Section 1223 of the Civil Code. We are inclined to believe that when Alamo proposed the sale to Robles he was acting genuinely. Unless the sale was genuinely proposed it would look a little as if Alamo and his brother-in-law Robles had induced Alvarez to make a rescission that he otherwise would not have made, an estoppel or something equivalent would arise.

The principal difficulty we have had over this case is the right of action in the plaintiff. The firm was physically in possession of the jitney and under section 3 of the contract there was a right of sale, of course under the conditions of the said contract. Perhaps in some of the American courts

the principle would be followed that where a party has a right to do a thing he generally does not need a court to tell him that he has that right, and to a certain extent this court has done the same thing. The principle of self-help is a little stronger in American and English jurisprudence than it is on the continent. Pollock & Maitland, History of English Law, vol. 2, *passim,* and especially pages 574 *et seq.* and page 168. These authors say that probably continental jurists would be surprised at the amount of self-help that once existed in England. On the continent, however, and generally in Porto Rico the parties are relegated to a court action as shown in innumerable sections of the codes.

The solution of the problem before us, we think, is to be found in section 1065 of the Civil Code. This provides as follows:

"If the person obliged to do something should not do it, it shall be ordered to be done at his expense.

"This shall also be done should he act in contravention of the tenor of the obligation. Whatever has been badly done may also be ordered to be undone."

The obligation of the defendants after defaulting in the payments was to put the jitney at the disposition of the plaintiff, or at least allow him to repossess it, as we read the terms of the contract. The defendants put the jitney into the natural and physical possession of the plaintiff, not under the terms of the contract but on the basis that the said contract had been rescinded. The defendants did not perform their obligation according to the tenor thereof.

The appellant says and its theory was, we take it, that it never did have the civil possession of the jitney, but it merely had a possession enforced by the attempts of the defendants to return the said jitney. It may be said that the plaintiff only had the custody of the jitney.

Now section 1065, *supra,* says that when a defendant does not do the thing according to the tenor of the obligation he

may be ordered to do it. This means that a court may order him to do it because no one else has a right to give orders in this sense.

Plaintiff, having made its election to sell the jitney, is entitled to sell it and to have an order of the court to that effect. As we have intimated before, the case is not one where the right of a party is unquestioned, but here the right to proceed under the contract was challenged. There was a real controversy.

The judgment will be reversed, the plaintiff will be authorized to sell the jitney under the terms of the contract and to apply the proceeds in accordance with the terms of the contract, and to take further steps in the suit if the price obtained at the sale is not sufficient to discharge the debt, and it is understood that the court below has authority to make the necessary orders to carry out the terms of the contract.

Mr. Justice Texidor took no part in the decision of this case.